UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO.: 4:05-CR-4-M

UNITED STATES OF AMERICA                               PLAINTIFF

v.

BEN W. WEBSTER                                         DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on motion of Defendant Ben Webster [DN 20] to suppress evidence arising from the search of 3217 Bobwhite Avenue and any statements made by Webster during this search.  In support of this motion, Webster alleges a lack of probable cause for issuance of the search warrants and a police failure to provide him with Miranda warnings.  An evidentiary hearing was held on June 16, 2005.  Fully briefed and argued, this matter is ripe for decision.  Based on the reasons set forth below, the motion by Defendant for the suppression of evidence and verbal statements [DN 20] is **DENIED**.

## I.  FACTS

The investigation of Defendant Ben Webster began on September 13, 2003.  A Perrysburg, Ohio, Police Officer, Chad Detterman, was in an America Online chat room called "I love yngr f" for the purposes of conducting an undercover investigation.  Officer Detterman observed a list being created for the purpose of trading electronic correspondence, including pictures.  Officer Detterman was required to type "list me" in

order to be placed on the list to receive correspondence.  He did so, and was contacted by someone using the screen name "Webfire451."  Webfire451 and Officer Detterman then communicated through instant messages.  Eventually, Webfire451 sent five photos of an adult male in various states of masturbation and eight photos of females engaged in sexually explicit conduct.  Several of the photos of the females depicted minor female children between the ages of 6 and 12.

The next day, September 17, 2003, Officer Detterman obtained a subpoena for the subscriber information from America Online ("AOL") for the screen name Webfire451.  On November 11, 2003, he received information from AOL identifying the screen name Webfire451 as belonging to Ben Webster, 3217 Bobwhite Avenue, Owensboro, Kentucky.  The information also showed that Webster paid $23.90 per month for his AOL account, and that the last session conducted using the screen name Webfire451 was on November 10, 2003 at 2:47.   The same day, Officer Detterman contacted Officer James McCarty of the Owensboro Police Department to alert him to the investigation and forward a copy of his case file and investigation.

On November 13, 2005, Detective McCarty obtained a search warrant from a District Court Judge in Daviess County, Kentucky for the search of the residence at 3217 Bobwhite Avenue, Owensboro, Kentucky.  McCarty's affidavit in support of the search warrant recounts Detterman's investigation, the AOL subscriber information, and his continuation of the investigation.  McCarty had confirmed that Ben and Carolyn Webster were listed as residing at 3217 Bobwhite Avenue in the driver's license records and

verified that two of the three automobiles in the driveway of the residence were registered to Ben and Carolyn Webster.  Finally, McCarty had examined the pictures transmitted by Webfire451.

On November 13, 2003, Detective McCarty and several other officers with the Owensboro Police Department went to the residence at 3217 Bobwhite Avenue to execute the search warrant.  When the officers arrived, Webster was not present.  During the course of the execution of the first warrant, the officers discovered a locked safe on the premises.  McCarty left to get a second search warrant in order to search the contents of the safe.  The other officers remained at the residence.  During McCarty's absence, Webster arrived at the home with his girlfriend.  In his motion, Webster alleges that he and his girlfriend were confined to his couch.  Nevertheless, Webster offered no testimony as to the details of his confinement.

During the execution of the second warrant, McCarty questioned Webster about the pornography.  McCarty testified at the hearing that his questioning was related to his concern that Webster may have been sexually abusing children living in the Owensboro community.  He further testified that Webster was not in custody, was not under arrest, and was free to leave the house.  According to the government, Webster admitted to McCarty that the computer in his home contained images of child pornography.  He also admitted that he had sent the pornographic photographs to Officer Detterman.  Finally, he admitted that one of his favorite chat rooms was a room called "traders," which is frequented by people interested in trading child pornography.

3

Webster's computer was taken from his residence pursuant to the state search warrant.  Following the execution of the warrants, McCarty contacted the FBI to inquire about federal prosecution of Webster.  The FBI took custody of Webster's computer and obtained a federal search warrant to search the contents.

Webster now seeks the suppress both the oral statements he made during the execution of the search warrants and any evidence taken from his home.  Specifically, Webster contends that the Affidavit in support of the search warrant did not establish sufficient probable cause for the issuance of a search warrant, and further, that the warrants were stale when executed.  Finally, Webster contends that any oral statements should be suppressed because he was not given any Miranda rights.   The Court will address each issue in turn.

## II.  DISCUSSION

### A.      Search Warrants

The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. CONST. amend IV.  Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search."  United States v. Bowling, 900 F.2d 926, 930 (6th Cir.), cert. denied, 498 U.S. 837 (1990).  See also United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993).  In order to establish probable cause, "[t]here must...be a 'nexus between the place to be searched and the evidence sought.'"  United States v.

4

Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting United States v. Van Shutters, 163 F.3d 331, 336-37 (6th Cir.1998)).

Here, there is a sufficient nexus between the place to be searched and the evidence sought.  The affidavit describes the AOL communications, the transmission of child pornography across state lines, the screen-name registration information, the account information, and McCarty's additional verification that Webster lived at 3217 Bobwhite Avenue.  On its face, the affidavit provides a nexus between the illegal activity and Webster's home.  Webster's argument that anyone in the world could have been using the screen-name Webfire451 is true enough, however, the affidavit need only establish a "sufficient nexus" between the residence and possible evidence of child pornography.  It does so.

Further, Webster contends that the search warrant was stale.  The Court disagrees. McCarty obtained the warrant within three days of being contacted by Detterman and less than two months after the internet transmission of the child pornography by Webfire451. The issue of staleness is an individual inquiry.  U.S. v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998).  Staleness also depends on the "inherent nature of the crime." Id.   In addition to the amount of time that has passed, courts must further examine the following factors:

> [T]he character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc.
>
> Id. (citing Andresen v. State, 24 Md.App. 128 (1975)); U.S. v. Sharkey,

5

2004 WL 2633447, *2 (6th Cir. 2004).

Here, the nature of the crime involved the possession and transmission of child pornography.  As the government notes, collectors of child pornography rarely dispose of the illegal material.  See, e.g., United States v. Hay, 231 F.3d 630, 636 (9th Cir. 2000) (application for warrant presented six months after 19 images transmitted via FTP not stale); United States v. Horn, 187 F.3d 781, 786-87 (8th Cir. 1999); United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997) (application for warrant presented ten months after visual depictions were downloaded by defendant was not stale).

Here, the affidavit provided sufficient evidence for the issuing judge to believe that the digital images were still stored on Webster's computer. Webfire451 was participating in a chat room specifically intended for people who wanted to trade or exchange images of child pornography.  Webfire451 had been linked to that address.  Given the nature of the crime, there was sufficient reason to believe that these images would still be on the computer two months later.

Accordingly, the evidence found in the execution of the search warrants is admissible.

### B.     Defendant's Statements

Webster has also moved to suppress the statements he made to Detective McCarty during the execution of the search warrants since he was not given

Miranda warnings.  The government submits that Miranda warnings were not

required because Webster was never under arrest or in police custody.

Since no Miranda warnings were given, the dispositive question is whether

Webster was under arrest or in police custody at the time of the questioning.  See

Miranda v. Arizona, 384 U.S. 436, 444 (1966).  A person is deemed to be in

custody, thus triggering the obligation of the police to issue Miranda warnings

when "there is a formal arrest or restraint on freedom of movement of the degree

associated with a formal arrest."  U.S. v. Swanson, 341 F.3d 524, 529 (6th Cir.

2003) (internal citations omitted); U.S. v. Martin, 95 Fed.Appx. 169, 177 (6th Cir.

2004).  When considering this inquiry, courts must examine:

> (1) whether a reasonable person in the suspect's position would feel
> free to leave; (2) the purpose of the questioning; (3) the length of the
> questioning; (4) whether the questioning was hostile or coercive; (5)
> other indicia of custody such as whether the suspect was informed
> that the questioning was voluntary or whether the suspect possessed
> unrestrained freedom of movement or whether the suspect
> acquiesced to the officers' requests to answer some questions.

Martin, 95 Fed.Appx. at 177 (citing United States v. Crossley, 224 F.3d 847, 861

(6th Cir.2000)).

Although it is well-settled that the government has the burden of proving

beyond a preponderance of the evidence that a confession made in custodial

interrogation was voluntary, see U.S. v. Chapman, 112 Fed.Appx. 469, 474 (6th

Cir. 2004) (citing U.S. v. Wrice, 954 F.2d 406, 410 (6th Cir. 1992)), it is less clear

which party has the burden of establishing that custody (or a sufficient restraint on

the freedom of movement) occurred.  The federal cases which have considered the issue have placed the evidentiary burden of establishing custody on the defendant. See e.g.  U.S v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989) (defendant has burden to establish that he was subject to custodial interrogation); U.S. v. Davis, 792 F.2d 1299, 1309 (5th Cir. 1986) (defendant has burden to establish that he was under arrest or in custody).  Although the Supreme Court has not specifically addressed the issue, it has held that a person temporarily detained during a routine traffic stop is not in custody necessitating Miranda warnings.  Berkemer v. McCarty, 468 U.S. 420 (1984).  In so holding, the McCarty court noted that: "[r]espondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest," Id. at 441, thereby placing the burden on the defendant by implication.

Using these cases as guidance, the Court concludes that Webster has the burden to demonstrate that he was a custodial setting when interrogated.  If Webster were to satisfactorily show that he was in custody during the questioning, the government would be required to show that any statements made were voluntary.  In this case, however, Webster presented no evidence contrary to the testimony of Officer McCarty, which was that Webster was not in custody, that he was not arrested, and that he was free to leave.

For these reasons, the Court finds that Webster has not met his burden of demonstrating that he was in custody at the time of the interrogation.  Accordingly, Webster's motion to suppress the oral statements is denied.

### III.  CONCLUSION

For the reasons set forth above, the motion by Defendant Webster to suppress the physical evidence and any oral statements arising from the aforementioned incidents [DN 20] is **DENIED.**

cc: counsel of record
Webster/405cr4m-MotiontoSuppressDeny